

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

DOROTHY J. BREUER,      )      No. ED100898

     )

     Respondent,      )      Appeal from the Circuit Court of

     )      Franklin County

vs.      )

     )

THOMAS M. BREUER,      )      Honorable David L. Hoven

     )

     Appellant.      )      Filed: September 30, 2014

### *Introduction*

Thomas Breuer (Father) appeals the judgment and decree of modification of dissolution of marriage entered by the Circuit Court of Franklin County. Father claims that the trial court erred in: (1) extending his child support obligation; (2) failing to make sufficient findings to order his support obligation to continue past the presumed date of emancipation; (3) modifying the judgment without finding a significant and continuing change in circumstances; and (4) ordering him to pay delinquent child support since his last support payment. We affirm in part and reverse and remand in part.

### *Factual and Procedural Background*

Dorothy Breuer (Mother) and Father married in 1989 and had twin daughters, J.B. and M.B., on July 30, 1990. The parties divorced in 1995. In its judgment and decree of dissolution of marriage, the trial court incorporated Mother and Father's Property Settlement Agreement (Agreement). The Agreement provided that "child support shall be paid by [Father] to [Mother]

in the sum of Seventy Dollars ($70.00) per week per child for the support of [J.B. and M.B.] until further order of the Court." In 1997, the trial court modified its judgment in certain respects but continued Father's support obligation in the same amount. In 2008, Mother filed a petition for appointment of guardian and conservator to obtain custody of J.B. due to her "physical/multi-impairment with cognitive impairment – developmental delay." The probate court entered judgment authorizing appointment of a guardian and conservator, finding that J.B. "is an incapacitated and disabled person[.]"

On July 30, 2011, J.B. turned twenty-one years of age, and Father stopped his child support payments. On January 9, 2012, Mother filed a motion to modify the judgment of dissolution seeking, among other things, an order that Father "continue to maintain child support" for J.B. and "increase child support retroactive to the date of this Motion[.]" Father was served on January 26, 2012. Father filed an amended answer to Mother's motion, in which he pleaded that J.B. has "become emancipated pursuant to [section] 452.340.3, and no child support should be ordered payable by either party."

On April 5, 2013, the trial court held a hearing on Mother's motion to modify. At the hearing, the trial court took judicial notice of the contents of the 2008 probate file regarding appointment of a guardian and conservator. The file contained, among other things, interrogatories answered by Dr. Martin Rudloff, J.B.'s pediatrician, and the opinions and recommendations of Benjamin Hotz, J.B.'s appointed representative in the matter. Dr. Rudloff's answers provided the following information: J.B. "has mild retardation and is unable to perform acts that require executive function at the level to be independent, keep [herself] safe, provide for clothing and shelter on an independent level." J.B. is unable to manage her finances, and although she understands the concept of and can count money, J.B. is unable to perform

2

"risk/benefit decisions," "budget," or "make value judgments." Mr. Hotz agreed with Dr. Rudloff and opined that J.B. is "partially incapacitated" and "would not be capable of handling her finances independently from her parents."

Mother and Father also testified at the 2013 modification hearing. Mother provided the following testimony regarding J.B.: At the time of Mother and Father's divorce, J.B. had "developmental mental problems," and J.B. "continue[s] to suffer from mental and physical disabilities." J.B. is unable to support herself, does not work outside the home,[1] and has the mental capacity of a ten-year-old. J.B. can do only "very basic" math, and she does not understand "the cost of things[.]" J.B. cannot drive, shares a bank account with Mother, and neither balances her check book nor "know[s] what [a bank statement] is."

Mother identified the Form 14 she completed based on Mother's and Father's separately filed 2012 tax returns. The Form 14 provided Mother and Father's combined monthly earning was $4,874, corresponding with a child support amount for one child of $836.00 per month. Mother testified that she was requesting that the trial court order Father to pay $485.00 per month "retroactive back to the date that he was served with this motion to modify" as well as "the child support that was in effect at the time [J.B.] turned 21."

Father testified that J.B. had her "condition" since birth and that he "understood that [J.B.] may have some developmental disabilities" at the time of his and Mother's divorce. He stated doctors and experts never indicated that her condition would improve and that "nothing as far as [J.B.'s] disability" had changed since the 1997 motion to modify.

---

[1] Mother explained that her senior year of high school, J.B. received minimum wage to assist in a kitchen for an hour and a half a day, five days a week. Mother also tried to pay J.B. to shred paper at Mother's office but it "frighten[ed]" her so she stopped.

On November 19, 2013, the trial court entered an amended judgment and decree of modification, finding that J.B. was not emancipated. Specifically, the trial court found that J.B. "was declared incapacitated [in] October … 2008[,]" and the evidence presented in the probate court's guardianship file "make[s] clear that [J.B.] cannot provide for herself" and that she "is not free from the care, custody, control and services of her parents." The trial court further found that application of the child support guidelines required an increase in child support by more than twenty percent and ordered Father to pay $485.00 per month "beginning the first day of the next month after execution of this Judgment." The trial court denied Mother's request for "said increase to take effect retroactively." The trial court further ordered that Father's previous child support payments of $70.00 per week "remain in effect until the first day of the next month after execution of this Judgment" and Father pay any and all delinquent support accrued since his last payment of support. Father appeals.

### Standard of Review

Our review of a modification of dissolution of marriage decree is limited to determining whether the judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. Selby v. Smith, 193 S.W.3d 819, 824 (Mo.App.S.D. 2006). "The determination to award a modification in child support lies within the discretion of the trial court, and the trial court's decision will be reversed only for abuse of discretion or misapplication of the law." Id. (quotation omitted).

### Discussion

In his first point, Father asserts that the trial court erred in extending his child support obligation past the presumed date of emancipation. Specifically, Father contends that Mother

4

"failed to meet her burden in presenting evidence regarding two of three necessary elements[,]" that J.B. was insolvent and not married.

The obligation to support a child generally terminates when that child reaches the age of eighteen. Mo. Rev. Stat. § 452.340.3. Section 452.340.4 provides that "[i]f the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." Mo. Rev. Stat. § 452.340.4. Father concedes that the probate file authorizing Mother as J.B.'s guardian was sufficient evidence to support a finding that J.B. was "incapacitated from supporting [her]self." However, he contends that "there was no evidence presented" regarding J.B.'s insolvency or marital status.

Insolvency in the context of Section 452.340.4 is "the inability to pay debts as they come due in the ordinary course of business." Braddy v. Braddy, 326 S.W.3d 567, 573 (Mo.App.E.D. 2010) (quotation omitted). "[S]howing a child's insolvency under Section 452.340.4 requires some evidence of the child's earnings, living expenses, and ability to meet obligations." Id. "The same facts that establish the child's inability to support himself, because of mental incapacity, can establish the child's inability to meet obligations." Id.

The record contains the following evidence to support a finding that J.B. was insolvent: Mother testified that J.B. is unable to support herself, has never worked outside of the home, has the mental capacity of a ten-year-old, and continues to live at Mother's home. J.B. can do only "very basic" math and she does not understand "the cost of things." J.B. shares a bank account with Mother and neither balances her check book nor knows the concept of a bank statement. Dr. Rudloff explained that J.B. is unable to manage her financial resources, perform cost/benefit analysis, budget, or make value judgments. Additionally, Mr. Hotz opined that J.B. "would not

5

be capable of handling her finances independently from her parents." Based on the evidence above, we conclude that the record contained sufficient evidence to support a finding that J.B. was insolvent. See e.g. Braddy, 326 S.W.3d at 573-74.

Father asserts that "there was no evidence presented regarding… [J.B.'s] marital status" so Mother "failed to meet her burden…." However, Father did not contest J.B.'s marital status in his amended answer to Mother's motion, nor did he ever assert that J.B. was married. Additionally, in the petition for appointment of guardianship, Mother stated that J.B. was not married. The trial court took judicial notice of the guardianship file. At the 2013 hearing, Mother testified that J.B. lived with her, and she continued to support and care for J.B. Based on our review of the record, we conclude that the record contained sufficient evidence from which the trial court could find that J.B. was not married. Point denied.

In his second point, Father asserts that the trial court erred in failing to make sufficient findings to order Father's support obligation to continue past the presumed date of emancipation. Specifically, Father alleges that the trial court did "not address J.B.'s insolvency or marital status." Mother contends that the trial court did not err because neither Father nor Mother requested specific findings of fact and conclusions of law and sufficient evidence supports the trial court's judgment.

"Where… there was no request for findings of fact and conclusions of law on matters in issue…, and the trial court made none, all facts are presumed to be found in accord with the judgment, and the judgment is to be upheld under any reasonable theory presented and supported by the evidence." Walker v. Walker, 936 S.W.2d 244, 249 (Mo.App.S.D. 1996); Rule 73.01(c). The record reveals that neither Father nor Mother requested specific findings of fact. Accordingly, we presume that the trial court found J.B. insolvent and not married. For the

6

reasons discussed in Point I, we conclude that the record contains sufficient evidence to support such findings of fact.  Point denied.

In his third point, Father asserts that the trial court erred in modifying the judgment without finding a significant and continuing change in unforeseeable circumstances. Specifically, Father contends that "the only true change that took place is J.B. turned twenty-one years of age[,]" which was foreseeable and thus "not appropriate to serve as the catalyst for modification."[2]  Mother counters that J.B.'s lack of development and a twenty-percent change in the presumed child support amount constituted a substantial and continuing change in circumstances.

Section 452.370 provides that a trial court may modify the provisions of a child support decree "only upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original award] unreasonable."  Mo. Rev. Stat. § 452.370.1.   Under Section 452.370, the party seeking modification makes a prima facie showing of a change in circumstance where the application of the child support guidelines results in a change from the existing amount by twenty percent or more.  Id.  "Once the party seeking modification has met this burden, the court then determines the child support amount 'in conformity with criteria set forth in section 452.340 and applicable supreme court rules.'"  Bearce v. Lewey, 182 S.W.3d 737, 742 (Mo.App.W.D. 2006) (quoting § 452.370.2).

The record reveals the following regarding a substantial and continuing change in circumstances to support the trial court's judgment:  Under the 1997 judgment, Father paid $70.00 per week in child support for J.B., totaling approximately $303.00 per month.  At the

_____

[2] To support his assertion that because the change was foreseeable, it cannot serve as the basis for modification, Father relies on Rustameyer v. Rustameyer, 148 S.W.3d 867 (Mo.App.E.D. 2004).  Father's reliance is misplaced because the trial court did not rely on J.B.'s disability when she turned twenty-one years of age in finding a substantial and continuing change.

modification hearing, Mother testified that she prepared a Form 14 based on the 2012 tax returns she and Father filed separately. She testified that the Form 14 support amount for one child was equal to $836.00 per month before applying any deductions. She testified that she was requesting Father pay $485.00 per month. In its amended judgment, the trial court found that "the application of the child support guidelines to the financial circumstances of the parties would result in a change of child support from the existing amount by more than twenty percent (20%). Based on the testimony of the parties and credible evidence presented[,] the Court orders … [t]hat [Father] shall pay to [Mother] as and for support for … [J.B.] … $485.00 per month."

Contrary to Father's allegation, the trial court made a finding that Father's current payment for child support deviates by more than twenty percent from the Form 14 presumed child support amount. Accordingly, Mother established a prima facie case of substantial and continuing change in circumstances. See Hudson v. Hudson, 887 S.W.2d 755, 757 (Mo.App.W.D. 1994). Additionally, Father neither alleges that he presented evidence nor that the trial court should have found that application of relevant factors listed in Rule 88.01(a)-(e) supported a finding that Form 14 should not be used. See id. Thus, the trial court did not err in modifying the previous judgment because it found a substantial and continuing change in circumstances. Point denied.

In his fourth and final point, Father asserts that the trial court erred in ordering Father to pay any and all delinquent support accrued since his last support payment. Specifically, Father contends that the amended judgment is "in conflict" and "creates inconsistent obligations" in that it denied Mother's request for retroactive application of the increased support amount yet ordered Father to pay any and all delinquent support since his last payment.

8

"A trial court has no authority to modify child support retroactive to a date before the filing of the motion to modify and service of summons." Lueckenotte v. Luechenotte, 34 S.W.3d 387, 398 (Mo. banc 2001). "The [child support] order may be modified only as to support … installments which accrued subsequent to the date of personal service." Id. (quoting § 452.370.6). Here, J.B. turned twenty-one years of age on July 30, 2011. Mother did not file her motion to modify until January 9, 2012, and Father was not served until January 26, 2012. In the November 19, 2013 amended judgment, the trial court ordered Father to pay $485.00 per month "beginning on the first day of the next month after execution of this Judgment[,]" December 1, 2013, and denied Mother's request for the increased child support amount to take effect retroactively. The trial court then ordered that Father's previous child support payments of $70.00 per week remain in effect until "the first day of the next month after execution of this Judgment[,]" December 1, 2013, and Father pay any and all delinquent support accrued since his last payment of support.

Because Missouri law does not allow retroactive application of child support before a motion to modify has been filed and served, the trial court erred in ordering Father to make support payments for the time period of July 30, 2011 through January 26, 2012. See e.g. Hicks v. Quednow, 197 S.W.3d 217, 222 (Mo.App.W.D. 2006). We reverse the trial court's judgment with respect to its order that Father pay any and all delinquent support payments from July 30, 2011 to January 26, 2012 and remand to the trial court to determine whether Father should pay $70 per week from the date of service, January 26, 2012, to December 1, 2013. We affirm the trial court's judgment denying Mother's request for retroactive application of the increased child support amount of $485.00 per month and ordering Father to pay $485.00 per month beginning on December 1, 2013.

### *Conclusion*

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.